FILED ENTERED
LODGED RECEIVED

JAN 1 3 2014

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY               DEPUTY

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

MICHAEL T. SCOTT, JR. #311-542        *

Plaintiff                             *

v                                     *       Civil Action No. RDB-13-1098

COMMISSIONER OF DIVISION              *
  OF CORRECTION,
J. PHILLIP MORGAN, WARDEN             *

Defendants                            *
                                  ******

## MEMORANDUM OPINION

Pending is Michael T. Scott, Jr.'s (hereinafter Scott) Complaint under 42 U.S.C. § 1983. Defendants, the Commissioner of Division of Correction and Warden J. Philip Morgan, by their counsel, have filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment with verified exhibits (ECF No. 17) to which Scott has filed an opposition with attachments.[1] (ECF No. 19). No hearing is needed to resolve the issues. *See* Local Rule 106.5 (D. Md. 2011). For reasons to follow, Defendants' Motion (ECF No. 17), treated as a Motion for Summary Judgment, will be GRANTED. Judgment will be entered in favor of Defendants and against Plaintiff by separate Order.

## CLAIMS PRESENTED

Scott, who is self-represented and an inmate at Maryland Correctional Training Center in Hagerstown, Maryland, claims his right to due process under the Fourteenth Amendment was

---

[1] Pursuant to *Roseboro v. Garrison*, 528 F.2d. 309 (4th Cir. 1975), Scott was informed that he was entitled to file an opposition response, with verified exhibits and declarations. Scott has filed no declarations or verified exhibits in this case.

violated when he was sanctioned after his urine test showed an abnormal creatinine level.[2] Scott requests compensatory damages in excess of $150,000 and injunctive relief, including restoration of good conduct credits and visitation privileges, assignment to a single inmate cell, and changes in urine testing procedures.[3] (ECF No. 1 at 4).

## BACKGROUND

This Court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party. *See Scott v. Harris*, 550 U.S. 372, 378 (2007). That review liberally construes Plaintiff's pleadings in light of the fact that he is proceeding pro se. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Scott was randomly selected for urine sampling on March 11, 2013 (ECF No. 17, Exhibits 5 and 7). Scott's urine sample was analyzed by Phamatech, an independent contractor, and found to have an abnormal level of creatinine with a quantitation of 14mg/dl. *Id.* Exhibits 5, 7, and 10). The urine sampled tested abnormal for creatinine levels. *Id.* Division of Correction ("DOC") Rule 115 states that inmates are subject to disciplinary measures where they "provide a diluted or adulterated urine sample." *Id.*, Exhibit 5; *see also* Exhibit 6 at 5.

On March 16, 2013, Scott was served with a Notice of Rule Violation and Notice of

---

[2] Creatinine is a compound formed from creatine by dehydration and is found in urine and blood. Creatinine is a breakdown product of creatine, which is an important part of muscle. Creatinine is removed from the body entirely by the kidneys. *See* http://www.nlm.nih.gov/medlineplus/ency/article/003610.htm. The court takes notice that drug use detection may be thwarted by diluting urine specimens through the intake of excess fluid consumption. By consuming large amounts of water (or other fluids) over a short period of time, the test taker's urine becomes highly diluted, thereby significantly lowering the concentration of any detectable drugs and/or drug metabolites eliminated in the urine.

[3] Scott suggests that inmates returning diluted urine samples be permitted to provide a second sample the following day so they may limit their fluid intake. (ECF Nos. 1 at 4 and 5 at 2).

Inmate Disciplinary Hearing. *Id.* Exhibits 4 and 5.[4] At the hearing held on March 26, 2013, Scott testified and presented documentary evidence to refute the evidence against him. *Id.* Exhibit 6. He submitted a document titled "NLCP State of the Science Update, February 14, 2000, Subject: Urine Specimen Validity Testing, Evaluation of the Scientific Data Used to Define a Urine Specimen as Substituted" to support his contention that DOT guidelines apply to creatinine levels less than 5 mg. *Id.*

Scott's testimony was recorded as follows:

> I have guidelines, it says 5 mg is supposed to be the cutoff it says 20 was too high and it is supposed to be 5, I work out, I eat fruit, one meal a day, coffee and the rest is water, can you read the guidelines.

*Id.*

The Hearing Officer considered the evidence and found Scott guilty of violating Rule 115, concluding:

> Hearing Officer considered [the] Notice of Inmate Rule Violation by C.O. J. Rodriguez and Phamatech printout, as well as statements of Michael Scott. Scott's defense is that the DOT [Department of Transportation] guidelines are for creatinine levels are [sic] less than 5 mg/dl and [n]ot 20 mg/dl. Hearing Officer is not persuaded by Scott's presentation. Hearing Officer finds that the document presented by Scott is not a Federal guideline or standard, but a scientific study that was conducted February 2000. Hearing Officer believes the data does not apply to this incident and is extremely outdated. Hearing Officer finds that the laboratory report from Phamatech documents that Scott's urine sample was diluted with a creatine level of 14 mg/dl. Hearing Officer finds Scott guilty of rule 115.

---

[4] The Inmate Rule Violation Notice reads in part :

> The test …was conducted by Pharmatech Chemist Mr. Ken Kodama. The urine sample tested abnormal for creatine levels. The federal DOT [Department of Transportation] guidelines state that urine specimens with creatinine levels of less than 20 mg/dl are indications of dilution. The subject had a urine creatinine quantitation of 14 mg/l.

The reason for the reference in the Notice of Inmate Rule Violation to DOT guidelines is unclear to this Court. Defendants do not assert, and this court is unaware, that the Department of Public Safety and Correctional Services has adopted Department of Transportation guidelines.

3

*Id.* Scott was sanctioned with 200 days in segregation, revocation of 120 good conduct credits, and indefinite loss of visitation. *Id*, Exhibit 6 at 6. He appealed the Hearing Examiner's decision to the Warden who modified the sanctions by reducing the number of days in segregation to 120, the number of good conduct credits to 30, and loss of visitation to 180 days. *Id.* Exhibit 3.

Scott filed Administrative Remedy Request (ARP) No. MCTC 0257-13 and Inmate Grievance Office (IGO) No. 20130660 in which he stated the DOC was not acting in accordance with DOT guidelines as it relates to urinalysis for dilution. ECF No. 17, Exhibit 1.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a) (emphasis added). Whether a fact is material depends upon the substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Accordingly, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Id. "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.' " *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir.2003) (alteration in original) (quoting Fed.R.Civ.P. 56(e)). The court must view the evidence in the light most favorable to the nonmovant and draw all justifiable inferences in his favor. *Scott* 550 U.S. at 378 (citation omitted); *see also Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor and City Council of Baltimore*, 721 F.3d 264, 283 (4th Cir. 2013) (citation omitted). At the same time, the court must not yield its obligation "to prevent

factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (citation and internal quotation marks omitted).

A federal court must liberally construe pleadings filed by pro se litigants. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The requirement of liberal construction does not mean the Court can ignore a clear failure in the pleadings to allege facts which set forth a claim. *See Weller v. Department of Social Services*, 901 F.2d 387, 391 (4th Cir. 1990). This Court cannot assume the existence of a genuine issue of material fact where none exists. Fed.R.Civ.P. 56(c).

## DISCUSSION

Scott disputes the sanctions imposed on him after he was determined guilty of a rule violation. Scott asserts that because the specific gravity of his urine was not tested at the time, it could not be determined whether his urine was diluted as specified in United States Department of Transportation (DOT) guidelines. Defendants aver they are entitled to summary judgment because Scott failed to exhaust his administrative remedies before filing this Complaint and, in any event, he received due process.

### A. Exhaustion of Remedies

Scott filed ARP No. MCTC 0257-13 and IGO No. 20130660, in which he alleged that the Division of Correction was not acting in accordance with federal Department of Transportation ("DOT") guidelines [5] for urine testing. Defendants assert Scott's grievance filed with Inmate Grievance Office was still pending at the time he filed this federal civil rights complaint. ECF No. 17, Exhibit No. 8. Thus, they posit Scott has failed to exhaust his administrative remedies as is required under the Prison Litigation Reform Act, 42 U.S.C. § 1997e and is barred from

---

[5] As noted, there is no evidence that the Department of Public Safety and Correctional Services has adopted DOT guidelines in this regard. *See supra* n. 4. To the extent Scott suggests his urinalysis test violated state law (ECF No. 5), violation of a state regulation is insufficient to support a 42 U.S.C. §1983 claim. *See e.g. Weller*, 901 F.2d. at 387, 392 (indicating a violation of State law or regulation does not provide a basis for a due process violation.).

seeking judicial review of his claims. *See Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006) (stating exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines.). Absent action which prevents the inmate from failing to access the appeals process through no fault of his own, an inmate must "utilize all available remedies" in accordance with the procedural rules to satisfy the PLRA's exhaustion requirement. *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008).

Scott states in his Reply that his grievance was dismissed by the Inmate Grievance Office prior to the time Defendants' filed their Motion to Dismiss or, in the Alternative, for Summary Judgment. (ECF No. 19 at 4, Exhibit B).[6] For reasons set forth hereinafter, it is clear that even if Scott has exhausted his administrative remedies, he has not shown that Defendants violated his right to due process.

### B. Due Process

Prisoners retain rights under the Due Process Clause, but prison disciplinary proceedings are not part of a criminal prosecution and the full array of rights due a prisoner in such proceedings does not apply. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citing *Morrissey v. Brewer*, 408 U.S. 471, 488 (1972)). In prison disciplinary proceedings where an inmate faces the possible loss of diminution credits, he is entitled to certain due process protections: (1) advance written notice of the charges against him; (2) a written statement of the evidence relied on and the reasons for taking any disciplinary action; (3) a hearing where he is afforded the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns; (4) the opportunity to have non-attorney representation when the

---

[6] Scott states the dismissal decision was filed with his Reply as an exhibit. The dismissal order is not among the documents filed with his Reply. (ECF No. 19).

6

inmate is illiterate or the disciplinary hearing involves complex issues; and (5) an impartial decision-maker. *See id.* at 563–71.

Substantive due process is satisfied if the disciplinary hearing decision is supported by "some evidence" in the record, *Superintendent, Mass. Correctional Inst. v. Hill*, 472 U.S. 445, 455 (1985), and federal courts do not review the correctness of a disciplinary hearing officer's findings of fact. *Kelly v. Cooper*, 502 F. Supp. 1371, 1376 (E.D. Va. 1980). The findings will be disturbed only when they are unsupported by any evidence, or when wholly arbitrary and capricious. *See Hill*, 472 U.S. at 455–56.

There is no dispute that Scott was served with notice of his inmate disciplinary hearing and rule violation. (ECF No. 17, Exhibit No. 5 and 6). The notice of inmate rule violation indicated that he had been randomly selected for urine sampling. *Id.*, Exhibit No. 6. It outlined the conditions under which the sample was collected, listed the results of the urinalysis, and provided an explanation of the rule that had been violated. *Id.* Scott was advised of his rights and given the opportunity to request evidence, witnesses, and the assistance of counsel. *Id.*, Exhibit No. 5. No more process was due.

After considering the facts and evidence presented, the hearing officer found Scott guilty of violating Rule 115 and imposed sanctions that included loss of good conduct credits. *Id.*, Exhibit No. 4 at 4. Thus, the relevant question is whether there was "any evidence" in the record to support the decision. *Superintendent*, 472 U.S. at 456. The hearing examiner considered Phamatech's report that Scott's urine sample returned abnormal creatinine levels of 14ml/dl. The hearing officer rendered her determination based on the disciplinary rule and evidence that the urine sample had an abnormal creatinine level. The evidence in the record was sufficient to satisfy due process.

7

There is no genuine dispute as to any material fact and Defendants are entitled to judgment as a matter of law. Accordingly, the Court will grant Defendants' Motion for Summary Judgment. Summary judgment will be entered in favor of Defendants and against Plaintiff by separate Order.

January 10, 2014
Date

/s/ Richard D. Bennett
RICHARD D. BENNETT
UNITED STATES DISTRICT JUDGE